23 C.C.P.A. (Patents)

## MacMICHAEL v. NEWNAM.

Patent Appeal No. 3631.

Court of Customs and Patent Appeals.
June 1, 1936.

Albert M. Austin and Harold F. Wilhelm, both of New York City (Gardner J. O'Boyle, of Washington, D.C., of counsel), for appellant.

John H. Bruninga, of St. Louis, Mo. (John H. Sutherland, of St. Louis, Mo., and Charles E. Riordon, of Washington, D. C., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

The Examiner of Interferences, of the United States Patent Office awarded priority of invention to Hugh R. MacMichael, the appellant herein, in all the counts, 1 to 8, inclusive, of an interference involving an invention relating to improvements in the control of operating mechanism for a Scotch hearth. Appeal was taken by William E. Newnam, the appellee herein, to the Board of Appeals, which modified the decision of the Examiner, of Interferences, affirming his award of priority to MacMichael of the subject matter of counts 1 and 2, and reversing him as to the subject matter of counts 3 to 8, inclusive, priority of invention in the latter being awarded to Newnam. From the decision of the Board of Appeals granting Newnam priority as to counts 3 to 8, inclusive, MacMichael has appealed to this court. No appeal was taken by Newnam as to counts 1 and 2.

Counts 3 and 8 are regarded as illustrative and read:

"3. A smelting furnace comprising a hearth adapted to receive molten metal upon which floats the material to be smelted, a carriage mounted for movement along said hearth, a rabbling device mounted on said carriage and adapted to rabble the charge on said hearth, a backing device mounted on said carriage and adapted to push back the rabbled charge, means for operating said rabbling and backing devices in cooperative relation, *and means for starting the operation of said backing device after said rabbling device has started."*

"8. A smelting furnace comprising, a hearth adapted to receive molten metal upon which floats the material to be smelted, a carriage mounted for movement along said hearth, a rabbling device mounted on said carriage and adapted to rabble the charge on said hearth, a backing device mounted on said carriage and adapted to push back the rabbled charge, means for feeding said carriage along said hearth, means for operating said backing and rabbling devices in cooperative relation and with said feeding means, *and means for holding said backing device retracted while said carriage moves a predetermined distance with said rabbling device in operation."* (Italics ours.)

MacMichael's application, No. 295,420, was filed July 26, 1928, while that of Newnam, No. 282,664, was filed June 4, 1928. MacMichael is therefore the junior party.

MacMichael was chief engineer of the American Smelting & Refining Company which had plants at Alton, Ill., and El Paso, Tex. Newnam was a metallurgical engineer employed by the St. Louis Smelting & Refining Company, of Collinsville, Ill.

Prior to the invention by Newnam, in 1916, of a mechanical poker or rabbler, to which further reference will be hereinafter made, the operation of a Scotch hearth required the services of three workmen; one to rabble or poke the ore and fuel while the same was progressively moving from one end of the hearth to the other, a second, following the first, to push back or shovel the disturbed ore and fuel against the water back, and a third to feed fresh ore and fuel into the trough. On account of the intense heat, summer work was greatly interfered with, and mechanical means of performing the services of the hearth workers was of very great importance to the lead ore smelting industry.

Newnam was granted a patent No. 1,-388,144, on August 16, 1921, for a mechanical poker or rabbler. The American Smelting & Refining Company, which employed MacMichael, took a license under this patent, and the improvement was generally adopted throughout the industry. In the fall of 1926 MacMichael began to experiment with a view of having a mechanical shovel which was to follow the poker and separate the grey slag from the charge which had to be shoveled back. In October, 1926, Newnam, at the request of one Porter, manager of the Alton plant of the American Smelting & Refining Company, visited the plant. According to the testimony of Porter, he and MacMichael arranged to talk to Newnam about the practicability of inventing a mechanical shovel when he (Newnam) a few days thereafter, was to visit the plant and talk to Porter. At the time of this visit, Newnam told Porter and MacMichael that in his opinion it could not be done and that he thought there were certain elements that would interfere with a machine-operated shovel.

In November, 1926, a shovel was built by Porter and one Poske along the principles set forth by MacMichael to Poske, and put on a furnace, but it could not be made to work. Newnam saw this appara-

tus and stated that he expected that it would not work. Shortly thereafter MacMichael went to El Paso. Tex., and there designed and built a shovel which was sent from there to Porter. Porter stated that about February 7, 1927, the machine was placed in regular operation, replacing one man on the furnace. Newnam, in the spring of 1927, saw this machine in operation. He testified: "I complimented Mr. Porter on the success he had achieved with the backing shovel attachment." Since the poker could not operate to the extreme left-hand part of the hearth on account of the shovel being on the left of the poker and interfering with its operation, a notch was cut in the end of the hearth to permit the shovel to extend past the hearth and thus permit the poker to operate the entire length of the hearth. The record shows that Newnam witnessed this device in operation.

Immediately thereafter (May 1, 1927) Newnam hired a draftsman and proceeded to make what he regarded as an improvement on the MacMichael machine. He devised a cam and crank which would so operate that the shovel was held back until the poker did its work at the extreme left corner of the hearth. When the poker had done its work there, the shovel then would begin to operate.

MacMichael introduced in evidence Exhibit 6, which is a drawing showing, among other things, a shovel with a clutch and throw-out mechanism coupled in a manner which satisfies the requirements of involved counts 3 to 8, inclusive. The drawing is given a date of April 18, 1927. The drawing is in black, except as to a few lines with which we are not concerned, and also with the exception of characters representing the device which is particularly concerned with the counts here at bar, which excepted subject matter is in red. There is much contention here on the part of Newnam that the drawing was erroneously accepted as sufficient evidence of conception on the part of MacMichael.

The disclosure in appellant's first application for a patent substantially described his original construction—the shovel which extended past the notched hearth end and which was held by the Examiner of Interferences to not satisfy the involved counts. This first application, No. 196,304, was filed June 3, 1927, and was one of the applications which was the subject of interference No. 58,459, between the same parties. Thirteen months later, on July 26, 1928, seven weeks after appellee had filed his application dated June 4, 1928, which included the claims constituting the counts of this interference, MacMichael filed the application at bar, No. 295,420, in which he disclosed and claimed substantially the same invention as that claimed in appellee's application. The counts here involved originated in appellee's application.

The Examiner of Interferences gave MacMichael April 18, 1927, the date of the drawing, Exhibit 6, as his conception date for the subject matter of counts 3 to 8, inclusive, and held that he could not be given a date of reduction to practice thereof prior to his earliest filing of an application disclosing the said counts, and found that his application dated April 25, 1928 (No. 272,602, one of the applications involved in interference No. 58,459), supported said counts, and gave its filing date for constructive reduction to practice of the same.

The Examiner of Interferences gave Newnam May 31, 1927, as the date of his conception of the subject matter of counts 3 to 8, inclusive, on the basis of the construction of an experimental shovel. The date on which the shovel replaced the hearth workers, December 28, 1927, was given to Newnam for his reduction to practice.

The Examiner of Interferences found that MacMichael was the first to conceive and the last to reduce to practice, and was diligent, and awarded priority to MacMichael. On appeal, the Board held, as to the counts at bar, that, even if MacMichael were given the conception date accorded to him, he was not diligent during the period of nearly a year when diligence was required.

The record shows that from just prior to the time Newnam entered the field, May 1, 1927, to the time MacMichael filed his application for a patent on the particular subject matter here involved, MacMichael was engaged in no other work towards reducing his invention to practice except in connection with preparing an application for an entirely new and larger hearth, which, among other things, would include the particular shovel action called for by the involved counts. MacMichael explains the delay in filing the instant application during this period of time by saying: "A.

During that period [from the spring of 1927 to July 26, 1928] I had a number of drawings made, showing improvements, or what I hope were improvements, in the general idea of developing larger mechanical hearths in it, as above-mentioned. I also visited the Federal other plants for study there, and in general, from time to time, I kept developing and recording developments of this work, including the construction of the charging machine described above, and experiments on a bigger hearth. I also made certain patent applications throughout that period."

We agree with the Board of Appeals that appellant did not show such diligence as is required by law under such circumstances.

■ There are two questions involved in this decision—originality and priority of invention. It is the contention of appellant that Newnam derived the invention of the counts involved from MacMichael. It is pointed out that as to the counts in the companion interference No. 58,459, and as to counts 1 and 2 of the instant interference No. 58,457, the Patent Office tribunals concurred in holding that Newnam obtained the subject matter of those counts from MacMichael and no appeal from such holdings was taken. Appellant contends that, while Newnam did not obtain from MacMichael knowledge of MacMichael's construction of his particular mechanism, that would retract the backing device or suspend the operation of the same, he did receive knowledge from MacMichael of everything that is inventive in the counts at bar; that providing a cam arrangement to hold the shovel back for a period of time was within the scope of mechanical skill and did not require invention; that MacMichael, having shown Newnam how to build and operate a mechanical shovel, should not lose the benefit of his invention because of Newnam's improvement thereon by the exercise of mechanical skill only.

Appellant contends that, if diligence was required upon this record, he has shown it, but that the Board erred in holding that the appellant was under any burden of showing diligence in perfecting an invention which another derived from him. Appellant furthermore argues that the counts, when properly construed in the light of the basic invention, clearly read upon the first hearth, with the notch in the end, constructed by MacMichael.

As to at least the first four of the involved counts, a casual examination of the same might lead to the conclusion that there was much merit in appellant's contention. In view, however, of the fact that the counts originated in Newnam's application and were evidently directed to a co-operative means for holding the shovel back, and since this was the construction of the Patent Office tribunals in holding that appellant's first application afforded no basis for making the counts at bar, and no appeal was taken therefrom to the Board of Appeals by appellant, we are constrained to disagree with the viewpoint of appellant that any of the counts at bar read upon the first shovel constructed by MacMichael.

■ There is but one question that remains to be decided. Summarizing appellant's contention, we think the question may be stated as follows: In an interference case involving originality, may an applicant for a patent be granted priority of a count covering the invention received from another to which the applicant has added limitations covering improvements by him which involve only the exercise of mechanical skill?

The first difficulty encountered in our answering this question in this character of proceeding is whether or not it involves questions of patentability and invention. In interference cases the issue of priority and those questions ancillary thereto constitute the only subject matter of which we have jurisdiction, and ordinarily we must assume that, for the purposes of the interference, the counts may properly be claimed by two or more of the parties involved and that they contain patentable subject matter. The determination of whether the counts at bar contain any limitations which make them inventive over and above that which would properly cover the early MacMichael structure would seem to us to involve deciding a question of invention, and, possibly, would necessitate a resort to the prior art which has not been ruled upon by either of the tribunals below. As we see it, we are not permitted to consider such a question here.

The last question herein stated was not discussed by either of the tribunals below, and there is nothing in the record to indicate that the question was presented to them in the manner in which it is presented here. Appellant has cited no author-

ities having any bearing upon this particular question.

Appellant has argued in this court that the holding of the Board from which appeal has been taken leaves the real inventor the loser of subject matter which he has invented, and awards to his adversary counts dominating his invention, although such adversary is not entitled to such an award because he has invented nothing, and that, unless this court reverses the Board's decision, he knows of no remedy that he may have.

If a remedy is necessary, it is not our province to suggest it. As hereinbefore stated, the question involving patentability which appellant raises is not one for us to decide. If it be proper that appellant's contention, as to the last question herein stated, should receive consideration, it seems obvious that it must be by the Patent Office during the ex parte consideration of the counts, following this proceeding. It is true that no such ex parte consideration could give to appellant claims containing the particular limitations found in the counts at bar, which apparently he could have had were it not for the application of appellee and subsequent proceedings relating thereto. Under our limited jurisdiction and upon the record before us, we think no other conclusion than that herein arrived at would be warranted.

We therefore hold that appellant cannot be awarded priority upon the theory that his invention of the original hearth was the invention expressed in the counts at bar. Since appellant was not diligent at a time when diligence was required after conception (if conception was on the date claimed by appellant) of the particular invention involved in the counts at bar, and which subject matter is disclosed in appellant's said second application for patent, he cannot here be awarded priority of invention expressed in the counts when reliance is made upon his said second application. Fageol v. Midboe, 56 F.(2d) 867, 19 C.C.P.A.(Patents) 1117.

After the original transcript of record had been certified from the Patent Office, appellee suggested a diminution thereof, and this court issued a writ of certiorari requiring that certain additions to the record be certified by the Commissioner of Patents and that the same be printed. In pursuance to said writ, said additions were made to the record. It is our view that the additional record so certified and printed was unnecessary to a proper determination of the issues in this case and that the cost of printing the same should be taxed against the appellee, and it is so ordered.

The decision of the Board of Appeals is affirmed.

Affirmed.